IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DESMOND WITHERSPOON**                                                                          **PLAINTIFF**

**V.**                            **CIVIL ACTION NO.: 4:16CV105-SA-RP**

**WARDEN TIMOTHY MORRIS, ET AL.**                                  **DEFENDANTS**

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

Desmond Witherspoon, an inmate in the custody of the Mississippi Department of Corrections ("MDOC"), is proceeding *pro se* and *in forma pauperis* in this action under 42 U.S.C. §1983, alleging that employees at the Mississippi State Penitentiary at Parchman ("Parchman") failed to protect him from harm. Warden Timothy Morris, Deputy Warden Andru Mills, and Lieutenant Tony Foster ("Defendants"[1]) have moved for summary judgment. Witherspoon has failed to reply to Defendants' motion. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that summary judgment should be denied in part and granted in part.

### Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) &(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star*

---

[1] Another defendant, Officer Marcus Phillips, was served with process but has not entered an appearance in this action. *See* Doc. #34.

*State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no evidence of contradictory facts is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**Plaintiff's Allegations**

As stated in his Complaint and clarified at his *Spears*[2] hearing, Witherspoon attests that the facts are as follows:

In April 2015, Witherspoon, a former Vice Lords gang member, was transferred from the Central Mississippi Correctional Facility to Parchman's 29-H building. Building 29-H contains an upper tier and a bottom tier, and Witherspoon was housed in cell 5, located on the lower tier. He noticed that the doors to various individual cells in 29-H building had broken locks, allowing the inmates to enter and exit their cells with only very minimal force needed to disengage the lock. Defendants were aware that the inmates exited their cells at will due to the broken locks,

---

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

but they merely verbally reprimanded the inmates who jimmied their cell doors rather than repair the locks.

After his arrival at Parchman, Witherspoon noticed that Gangster Disciples gang members who referred to themselves as "Stalkers" were housed on both tiers. At a previous facility, Witherspoon had been involved in a physical altercation with members of this gang, and as a result of the altercation, he was required to seek medical treatment. He voiced concern to Warden Morris about being around these gang members and verbally requested that Warden Morris move him. The Warden stated he could not move Witherspoon, citing a lack of available space, and he advised Witherspoon to contact correctional staff if he had any trouble.

On July 9, 2015, at around 5:30 p.m., with the entire bottom tier on recreation time, Witherspoon was outside of his cell when three Stalkers, two from the bottom tier and the "leader" from the top tier, attacked him with homemade knives. Inmates housed on the top tier were supposed to be locked in their cells at the time. Witherspoon was stabbed approximately fifteen times before the Stalkers made him get into his cell, shower, and remove his bloody clothes. The Stalkers attempted to stop Witherspoon's bleeding so that the assault would not be detected, and they essentially held Witherspoon hostage in his cell for several hours. Witherspoon's cellmate was present during this period of time, he was helping the Stalkers make sure Witherspoon stayed quiet. Eventually, Officer Phillips came to the cell and asked what the inmates were doing. Witherspoon, afraid of further attack, did not make a plea for help, though he had a bandage on his face that might have been visible to Officer Phillips. When the Stalkers informed Officer Phillips that everything was alright and that they would "take care" of him the following day, Phillips "turned a blind eye" and left without obtaining assistance for

Witherspoon.

When employee shift change occurred at 12:00 a.m. on July 10, 2015, the Stalkers went back to their individual cells, and Witherspoon's injuries were discovered. His cellmate had fled the cell by the time help arrived for Witherspoon. Witherspoon was transported to the hospital and treated. He subsequently identified his assailants, and an investigation was opened into the attack against him.

## Defendants' Allegations

Defendants assert that Witherspoon's claims against them in their official capacities must be dismissed pursuant to the doctrine of sovereign immunity, while claims against them in their individual capacities must be dismissed for failure to state an actionable claim. They otherwise note that the assault against Witherspoon was investigated by the Corrections Investigation Division ("CID"), and that it was determined that the matter would be submitted to the District Attorney for prosecution of the inmates who assaulted Witherspoon. *See, e.g.*, Doc. #41-1.

## Sovereign Immunity

Defendants have asserted the defense of sovereign immunity as to the claims against them in their official capacities. The Eleventh Amendment to the United States Constitution bars suits by private citizens against states in federal courts unless the particular state has waived its immunity, or Congress has abrogated the state's sovereign immunity. U.S. Const. Amend. XI; *Perez v. Region 20 Educ. Service Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Mississippi has not waived its sovereign immunity. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Additionally,

4

"MDOC is considered an arm of the State of Mississippi" and is immune from suit. *See Williams v. Miss. Dep't of Corr.*, No. 3:12cv259-CWR-FKB, 2012 WL 2052101, at *1 (S.D. Miss. June 6, 2012); *see also* Miss. Code Ann. §47-5-1, *et seq*. Accordingly, Defendants are entitled to Eleventh Amendment immunity as to the claims against them in their official capacities.[3]

### Failure-to-Protect Claim

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33(1994). Liability attaches to an officer's failure to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety." *Id*. at 834; *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004). "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards the risk. *Id*. at 837 (quotation marks omitted). Therefore, in order for liability to attach to a prison official's failure to protect, the substantial risk and the need for protection must be obvious. *Adames*, 331 F.3d at 512.

Because of the subjective component necessary to establish failure-to-protect liability, an officer cannot be deliberately indifferent when an inmate is a victim of an unforeseeable attack. *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Therefore, an officer's negligence or dereliction of duty cannot be the basis of a failure-to-protect claim. *See Adames v. Perez*, 331

---

[3]An exception to sovereign immunity exists in cases of prospective injunctive relief, but such relief is not implicated in this case. *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908).

F.3d 508, 514 (5th Cir. 2003); *see also Daniels v. Williams*, 474 U.S. 327 (1986) (holding negligence does not state §1983 cause of action).

Defendants maintain that they are entitled to judgment in their favor against them in their individual capacities, as Witherspoon as failed to state a cognizable constitutional claim. Specifically, Defendants state:

> The sole basis for this claim as to defendants Mills and Foster is that these defendants (along with Warden Morris) knew that certain cell doors in Unit 29-H were broken but did nothing about it. [1], p. 5. Plaintiff claims that because the cell doors were broken, inmates could easily break out of their cells, and that this resulted in him being assaulted. *Id*. This claim makes no sense and is not supported by evidence. First, Plaintiff states that he himself was "sitting in front of [his] cell" when he was assaulted. *Id*. Plaintiff fails to establish that any of the inmates that assaulted him should have been locked in their cells when the assault took place. The report from the investigation conducted by the Criminal Investigation Division ("CID") makes no mention of the inmates breaking out of their cells to assault Plaintiff. *Ex. 1*.
>
> Furthermore, Plaintiff offers no evidence for his assertion that Defendants "knew that these doors were broken and failed to do anything about it." [1], p. 5. Plaintiff does not state exactly which doors were broken or how long such doors had been broken, nor does he offer any evidence to support the allegation that Defendants knew that any such doors were broken.

Doc. #42 at 4-5.

The Court notes that Witherspoon has alleged that he was enjoying recreation time at the time of the assault. While two of the inmates who attacked Witherspoon were presumably allowed to be outside of their cells on recreation time, Witherspoon has alleged that he was also attacked by the "leader" of the assailants, who should have been locked in his cell at the time. Witherspoon has additionally alleged that Defendants knew that the doors were easily opened by inmates, and that inmates, in fact, frequently exited their cells without permission. Witherspoon's complaint and his *Spears* testimony constitute competent summary judgment

evidence. *See Hart v. Hairston*, 343 F.3d 762, 764 n. 1 (5th Cir.2003) (finding declarations in a verified complaint are competent sworn testimony for summary judgment purposes); *Falcon v. Holly*, 480 F. App'x 325, 2012 WL 2579926, at *1 (5th Cir. July 3, 2012) (finding "allegations in [the prisoner's] verified complaint and other verified pleadings as well as his sworn testimony at the *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) hearing constitute competent summary judgment evidence[.]"). Further, the CID report explicitly states that Officer Jordan reported that Witherspoon's cellmate "had broken out of [his] cell" and run to another cell at some point after she had conducted body count. Doc. #41-1 at 2. While this statement in the CID report does not establish that someone broke out of a cell to assault Witherspoon, it does establish the fact that there were security issues with at least some of the cell doors at 29-H building, thereby raising a question about the pervasiveness of the problem.

Witherspoon concedes that he made no attempt to red-tag[4] any particular inmate, and there has been no evidence presented that he believed any of the particular gang members involved in the attack against him were going to assault him. *See Spears* testimony, Doc. #13 at 00:29:00 through 00:31:20. However, Witherspoon has alleged that he made Defendant Morris aware of his former gang affiliation and his prior violent altercation with members of the Gangster Disciples, as well as his general discomfort and apprehension about being housed with members of that gang. Neither Witherspoon's general fear of members of a particular gang, nor prison officials' awareness that prisoners could open their cells at will, if viewed in isolation,

---

[4] "The 'red-tag' process is a procedure that allows inmates who are intimidated or threatened by other inmates to separate themselves from those inmates." *Simpson v. Epps,* 2010 WL 4053727 (S.D.Miss. Oct. 15, 2010). *Hall v. Bingham*, No. 3:08CV489-FKB, 2012 WL 868796, at *1 (S.D. Miss. Mar. 13, 2012)

would likely support a claim for failure to protect. However, given Defendants' general knowledge of Witherspoon's prior altercation with the Gangster Disciples and his concern that their problems would carry over at Parchman, in combination with the knowledge inmates could not be securely held in their cells due to malfunctioning locks, the Court finds that there remains a genuine issue of material fact as to whether Defendants were deliberately indifferent to the risk that Witherspoon might be attacked.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment [41] is **GRANTED** as to claims against Defendants in their official capacities and **DENIED** as to claims against Defendants in their individual capacities.

**SO ORDERED** this the 23rd day of March, 2017.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**